1. An agreement entered into between two equal partners, in anticipation of loss to the business in the event either died, whereby each partner should take out a $10,000 life-insurance policy, each naming his own wife as beneficiary, the agreement providing that the premiums on both policies should be paid out of firm assets until one of the partners died, at which time the receipt of the $10,000 from the insurance policy would be deemed payment for the interest of the partner who died first, and that his interest in the partnership would immediately vest and become the unconditional property of the surviving partner, constituted a valid contract. The payment of the insurance premiums out of firm assets, and the benefits flowing to each of the partners as a result of the agreement, constituted a sufficient consideration.
2. Under the allegations of the petition, the complainant was entitled to reformation and specific performance.
 No. 14386. DECEMBER 1, 1942.
J. C. Howell filed petition against the executor and the heirs at law of his deceased partner, seeking specific performance of a partnership agreement, and to enjoin the defendants from interfering with the business. He alleged substantially the following:
For some years before 1934 plaintiff and E. B. Howell were the owners and operated a retail grocery business in Rome, Floyd County, as equal partners, under the name of Howell Grocery Company. In the fall of 1934, they were approached by an insurance solicitor for the Metropolitan Life Insurance Company of New York, who proposed that the partners each apply for a life-insurance policy in the sum of $10,000, each partner to name his wife as beneficiary. The solicitor called attention to the fact that in case of the death of either partner there would likely be a considerable destruction in the value of the partnership, by reason of the law that the business would have to be liquidated by the surviving partner. He recommended that the business pay the premiums on both policies, and that the partners enter into agreements that upon the death of either the interest of the deceased partner would immediately belong to and become the property of the surviving partner, in consideration of the mutual promises of the partners, and of the payments by the business of the premiums on the policies, and of the provisions for the support and benefit of the wife of the first deceased partner by reason of the payment to her of the proceeds of the life-insurance policy on the life of the first deceased partner. Upon the first death of a partner any agreement in relation to the life insurance of the surviving partner would terminate, and the surviving partner would handle such policy on his own life as he saw fit. The plaintiff and E. B. Howell consulted with each other and with their wives, and after consideration agreed between themselves, and with their wives, and with the insurance solicitor, that they would each make application for a policy of insurance in pursuance of the plan outlined, and would make mutual contracts to make the plan effective. The insurance solicitor advised them that he was familiar with such matters, and would without additional expense draw up an agreement, which, in the technical language of insurance, with which they were not familiar, would, when taken in connection with the insurance policy, effectuate the plan and agreement as a binding contract between the parties. Whereupon the plaintiff and his *Page 74 
partner, each applied for a policy of life insurance, which policies were issued, each partner naming his own wife as beneficiary. when the policies were delivered, the insurance solicitor prepared for the signature of the plaintiff, and of E. B. Howell and his wife, an agreement as follows:
"State of Georgia, County of Floyd.
"This agreement made and entered into at Rome, Georgia, this the twenty-third day of October, 1934, provides as follows: Irma T. Howell, of Rome, Georgia, agrees to accept for her full and complete equity of the Howell Grocery Company No. 2, the proceeds of one insurance contract issued by The Metropolitan Life Insurance Company, of New York City, on which she is named beneficiary, Policy No. 6546835-A for ten ($10,000) thousand dollars, on life of Elbert B. Howell, premiums on this insurance is being paid out of the profits of the Howell Grocery Company No. 2, and the intention of said insurance is for the full purpose of purchasing from Irma T. Howell her full and complete interest of said Howell Grocery Company No. 2, in case of prior death of Elbert B. Howell. This contract shall be binding upon the parties hereto, their heirs, executors, and assigns."
The plaintiff and E. B. Howell and his wife, Mrs. Irma T. Howell, signed the above agreement in the belief that the contract, taken in connection with a like agreement prepared for an executed by E. B. Howell and plaintiff and his wife, and with the policies of insurance, effectuated and made a presently legal and binding contract to effectuate the intention of the parties, in accordance with the plan heretofore stated. The contracts were mutually delivered and accepted by the parties with the belief that the above-stated plan and purpose, and the verbal contracts as set out, had become effectuated by legal and binding written contracts. The verbal agreement between the plaintiff and E. B. Howell and his wife was plain, clear, and unambiguous, and made in pursuance of the plan outlined and agreed on, and was completed and ratified upon the delivery by the insurance company of the two policies of life insurance. The verbal understanding and agreement was: that the Howell Grocery Company, a partnership composed of the plaintiff and E. B. Howell, would pay the periodic premiums on both of the policies issued by the insurance company, until one of the partners died; that in the meantime they would *Page 75 
continue as equal partners in the control, ownership, and operation of the business; that upon the death of the partner who died before the other partner died the insurance policy on the life of the first deceased partner, payable to the wife of such first deceased partner, would be taken and deemed payment for the interest of the first deceased partner, and that such interest would thereupon immediately vest and become the unconditional property of the surviving partner, subject to the partnership debts; and that the business, upon the death of the partner first dying, would, subject to the partnership liabilities, become the full, complete, and unconditional property and business of the surviving partner; that all restrictions on the policy issued on the life of the surviving partner would cease, and the same would become a policy of insurance, according to its own terms, on the life of the survivor.
In the petition it was alleged, that the verbal agreement was positive, certain, supported by consideration, and was of force and effect at the time it was made, and the plaintiff and E. B. Howell and his wife, relying on the technical knowledge and experience of the insurance solicitor, thought and believed that they had made a written contract, setting up the full terms and conditions of the verbal contract when they executed the written contracts as above mentioned; all of which was accomplished on or before October 23, 1934, and the verbal contract and the written contracts have remained in full force and effect ever since. On November 7, 1934, E. B. Howell executed a will devising to his wife, Mrs. Irma T. Howell, certain property, and giving all the rest and residue of his property, real and personal, to the First National Bank of Rome, as trustee, for the use and benefit of his wife and their daughter, Elizabeth Howell. The trustee was given extensive powers of management and control, and direction was given as to the management of the property, but the will did not mention the partnership business. E. B. Howell died on July 21, 1941, and under the terms of the will the First National Bank of Rome qualified as executor. Mrs. Irma T. Howell has received the proceeds of the insurance policy payable to her in accordance with the agreement and intention of the parties. The plaintiff has remained in possession of the partnership business, and claims full ownership by reason of the contract; but the bank as executor disputes the right of the plaintiff, and takes the position that under the will *Page 76 
and the written contract the plaintiff is not entitled to the full ownership of the partnership, and that he has not acquired the same by purchase, but on the other hand the bank, as executor, claims that it is entitled to an accounting from the plaintiff, and that his possession and right in the partnership is simply the right of the surviving partner to wind up the affairs of the partnership.
The plaintiff is now advised that the terms of the written agreement are uncertain and indefinite; that they do not clearly reflect the intention and agreement of the parties; that the bank, as executor, claims that under the general terms of the will it will be required to reduce the partnership interest to its possession, so as to be able to carry out the gift under the will to the trustee therein named. The plaintiff alleges, that there was a clear, unambiguous, and certain verbal contract between him and the deceased partner, concurred in by the latter's wife; that the contract has been performed by plaintiff; that the scrivener who undertook to reduce the verbal contract to written form was either mistaken as to the terms of the contract, or was unable to clearly reflect the same in the writing that he prepared, which was executed by the parties; and that the parties to the written agreement, on account of mutual mistake of fact, failed to realize its deficiencies, and failed to understand that it did not reflect their mutual intention. The plaintiff is without adequate remedy at law. If he is not entitled to the performance of the verbal contract, he must hold the property as a surviving partner, and liquidate and incur great loss in the value of his interest as well as in the value of the interest formerly owned by the deceased partner. If he fails and refuses to hold the property as surviving partner, he is liable to a suit for an accounting, and is liable to suffer irreparable loss. The estate of the deceased partner is amply solvent, and the rights of outside creditors are not involved; and in any event all interests are represented by the executor, the trustee, and the defendants. Elizabeth Howell is a child of the deceased partner, and is under the age of fourteen years.
The prayers (beside those for process, service, restraining order) were that a guardian ad litem be appointed for the minor and made a defendant; that the defendants be restrained from proceeding against the plaintiff, or against the partnership property, otherwise than by cross-action; that the contract be so reformed as *Page 77 
clearly to reflect and set out the terms and meaning of the real contract between the parties, and be so declared; that the contract as reformed, or the verbal contract as alleged, be ordered specifically performed by the defendants, and especially by the bank as executor, and that the interest of the deceased partner, and any interest that Mrs. Irma T. Howell, or any interest of Elizabeth Howell, or the bank as executor or as trustee, be ordered vested in the plaintiff; and that the parties and their representatives be required to execute any necessary contracts to effectuate the specific performance, or the performance be declared and decreed by the order of court; and for general relief.
The bank, as executor and trustee, interposed a demurrer on the grounds: (1) The allegations of the petition are insufficient to set forth any cause of action against defendant. (2) The averments as a whole show on their face only an attempt to vary, alter, enlarge, change, and give consideration to the alleged contract set up in the petition. (3) The allegations as a whole are an attempt by the plaintiff to enforce a contract which is illegal and void, and the same is without consideration and contrary to the public policy of this State. (4) The averments with reference to the alleged verbal agreement (a) are conclusions of the pleader; (b) the agreement so alleged is contrary to the public policy of this State; (c) the same are contradictory to the allegations elsewhere in the petition setting up the written contract; (d) the allegations seek to vary, alter, enlarge, change, and give consideration to an alleged contract which in itself is illegal and void. (5) It is not alleged whether or not J. C. Howell knew that the deceased had executed the will or the terms thereof, or when he had knowledge that the will had been executed; the allegation that by the execution of the will by the deceased partner it was not his intention to change the contract is a conclusion of the pleader. (6) The alleged written contract is testamentary in character, and can not be enforced.
The plaintiff amended the petition by adding: "At or about the time the said will was executed, the said Elbert Benjamin Howell mentioned or told plaintiff, or stated in plaintiff's presence, that he had executed a will, but at no time did he ever tell plaintiff the contents of said will, nor did plaintiff ever see the will or know the contents thereof until after the death of the said Elbert Benjamin Howell." *Page 78 
The exception is to the overruling of the demurrer.
Counsel for the plaintiff in error insist that as between the partners there was no consideration for the contract, because each had a wife, each owned an equal interest in the partnership, each took out a $10,000 life-insurance policy (and in the absence of an allegation to the contrary it must be assumed that the premiums on each of the policies were equal). In other words the insistence is that, so far as the partners are concerned, their situation was equal, and therefore there could be no consideration passing between them to support such a contract.
In re Orvis, 223 N.Y. 1 (2) (119 N.E. 88, 3 A.L.R. 1636), it was held: "An agreement between partners to constitute, from undivided profits, a fund for continuation of the business, which shall be the property of the survivor upon the death of either, rests upon mutual and equal consideration, and is enforceable." In Murphy v. Murphy, 217 Mass. 233 (104 N.E. 466), it was said: "Partnership agreements which provide for the conduct of the business after the death of one or more of the partners, and for the disposition of the interest of partners in the partnership in such event, are frequent. See Williams v.
Brookline, 194 Mass. 45, 79 N.E. 779. When fairly made, without any illegal purpose and without the intent to evade the statute of wills, they are not open to objection." In Stearns v.
Brookline, 219 Mass. 238 (107 N.E. 57), it was held: "A parol agreement between a partner and copartners, that in the event of the death of the partner the firm should continue, and that he would make arrangements so that his estate after his death should take the place in the firm which he had when living, is a binding part of the firm agreement, and on a breach thereof, by the refusal of his personal representative to enter the firm after the death of the partner, the estate may be subjected to a suit for damages." In 40 Am. Jur. 347, §§ 311, 312, it is said: "Agreements between partners that in the event of the death of one before the termination of the partnership, the survivor shall pay a certain amount to the legal representatives or heirs of the deceased partner and that thereupon he shall become the sole owner of the partnership business, are frequent, and when fairly made, for a valuable consideration and without any illegal *Page 79 
purpose, such agreements are not open to objection. A provision in a partnership agreement that on the death of one of the partners his interest in the partnership shall become the property of the other partners is not testamentary in nature, and the fact that the agreement is not executed according to the requirements of the statute of wills does not invalidate it. It is enforceable if supported by sufficient consideration."
In the instant case, the payment of the insurance premiums out of firm assets, and the benefits flowing to each of the partners as a result of the plan, constituted a sufficient consideration. Under the allegations of the petition, the complainant was entitled to reformation and specific performance. The judge did not err in overruling the demurrer.
Judgment affirmed. All the Justices concur.